UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHWESTERN DIVISION

| | |
|---|---|
| Spirit Lake Tribe, on its own behalf and on behalf of its members, Standing Rock Sioux Tribe, on its own behalf and on behalf of its members, Dion Jackson, Kara Longie, Kim Twinn, Terry Yellow Fat, Leslie Peltier, and Clark Peltier,<br><br>                                 Plaintiffs,<br><br>          vs.<br><br>Alvin Jaeger, in his official capacity as the Secretary of State,<br><br>                                 Defendant. | Case No. 1:18-cv-00222<br><br><br>**REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT** |

Defendant Alvin Jaeger submits this brief in reply to Plaintiffs' Opposition To Defendant's Motion To Dismiss Second Amended Complaint (Doc. 55) ("Pls.' Br.").

### A.    Spirit Lake and Standing Rock Lack Standing.

Plaintiffs initially argue that if the Individual Plaintiffs[1] have standing[2], the Court need not consider Defendant's standing arguments with respect to the two tribes named as plaintiffs, Spirit Lake Tribe and Standing Rock Sioux Tribe (collectively the "Tribes"). Doc. 55, p. 6.  In that regard, Plaintiffs cite *Jones v. Gale*, 470 F.3d 1261, 1265–66 (8th Cir. 2006) (quoting *Nat'l Wildlife Fed'n v. Agricultural Stabilization & Conservation Serv.,* 955 F.2d 1199, 1203 (8th Cir. 1992)) (stating, "'where one plaintiff establishes standing

---

[1] Dion Jackson ("Jackson"), Kara Longie ("Longie"), Kim Twinn ("Twinn"), Terry Yellow Fat ("Yellow Fat"), and Leslie and Clark Peltier (the "Peltiers").

[2] Contrary to Plaintiffs' assertion (Doc. 55, p. 6), Defendant does not concede that the Individual Plaintiffs have standing.  While the Individual Plaintiffs' standing is not at issue in this motion, Defendant reserves the right to argue lack of standing on the part of the Individual Plaintiffs if appropriate at a later time.  *See Davis v. Fed. Election Comm'n*, 554 U.S. 724, 732–33 (2008) ("[I]t is not enough that the requisite interest exist at the outset. To qualify as a case fit for federal-court adjudication, an actual controversy must be extant at all stages of review.") (quoting *Arizonans for Official English v. Arizona*, 520 U.S. 43 (1997)) (internal quotation marks omitted).

to sue, the standing of other plaintiffs is immaterial' to jurisdiction.")  However, regardless of the alleged standing of the Individual Plaintiffs, the Court must dismiss the Tribes for lack of standing. The Tribes are seeking different relief than the Individual Plaintiffs and should not be permitted to litigate this case with no standing.

With respect to Article III standing, the United States Supreme Court has repeatedly emphasized that "standing is not dispensed in gross." *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650 (2017) (internal quotation marks omitted) (quoting *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008); *Lewis v. Casey*, 518 U.S. 343, 358, n. 6 (1996)); *see also DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 353 (2006); *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000).  "To the contrary, 'a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought.'"  *Id.* (quoting Davis, 554 U.S. at 734) (citing *DaimlerChrysler,* 547 U.S. at 352; *Friends of the Earth,* 528 U.S. at 185; *Los Angeles v. Lyons,* 461 U.S. 95, 105–106, and n. 7 (1983)).  When there are multiple plaintiffs, the same principles apply, and "[a]t least one plaintiff must have standing to seek each form of relief requested in the complaint."  *Town of Chester N.Y.*, 137 S. Ct. at 1651.

The relief sought by the Tribes is not the same as the relief sought by the Individual Plaintiffs, and thus the Tribes cannot escape standing scrutiny.  This is an "as applied" case.  Doc. 51, ¶¶ 6, 233, 268, 272, 273, and Requested Relief ¶¶ 1, 4.  The Individual Plaintiffs each claim they face the prospect of not being able to vote due to alleged irregularities with respect to their residential street address or alleged lack of access to supplemental documentation.  *Id.* at ¶¶ 53-121.  However, the Requested Relief in the Second Amended Complaint goes well beyond the voting rights of the named Individual Plaintiffs.  The Second Amended Complaint seeks a declaratory judgment and an injunction with respect to North Dakota's voter ID law as applied to "voters residing in the counties in North Dakota that include territory within the exterior boundaries of an Indian

reservation…."[3]  *Id.* at Requested Relief, ¶¶ 1-6.  The broad relief requested, relating to voters residing in any county that contains an Indian reservation, relies on the presence of plaintiff Tribes, rather than merely the Individual Plaintiffs.  If the Tribes wish to seek this broad relief beyond the alleged concerns of the named Individual Plaintiffs, they must demonstrate Article III standing in their own right and not rely on the standing of the Individual Plaintiffs to avoid scrutiny.

In any event, a court should dismiss a plaintiff from a case when standing is successfully challenged as to that plaintiff, even when other plaintiffs have standing to pursue the same claims or are seeking the same relief.  Prior to the court proceeding to the merits of a case, it must be satisfied that "the particular plaintiff" who seeks relief from the court has standing.  *DaimlerChrysler,* 547 U.S. at 352 (quoting *Allen v. Wright*, 468 U.S. 737, 752 (1984)).  There are numerous similar cases in which some plaintiffs are dismissed for lack of standing, while others are permitted to continue to make the same claims.  *See, e.g.*, *Miller v. Albright*, 523 U.S. 420, 426-427 (1998) (explaining that petitioner's father had originally been a co-plaintiff raising the same claim, but was dismissed by the district court for lack of standing); *Nunez Colon v. Toledo-Davila*, 648 F.3d 15, 18 (1st Cir. 2011) (dismissing "the claims of the wife and children plaintiffs for lack of standing"); *Phillips v. Montgomery Cty.*, 24 F.3d 736, 737 (5th Cir. 1994) (per curiam) (observing that the district court had permitted the suit to continue but "dismissed one plaintiff" for lack of standing).  The Tribes should not be permitted to evade dismissal by relying on the standing of other plaintiffs when the tribes do not have standing to pursue their own claims.  If a litigant without standing wields the subpoena power, discovery power, or other authority to compel action, it is a violation of Article III.  *See Hein v. Freedom From Religion Found., Inc.,* 551 U.S. 587, 617 (2007) (Kennedy, J., concurring)

---

[3] The Tribes have no standing to represent the interests of unnamed individuals who are not members of their two specific tribes or do not reside on their reservation.  Status as a tribe does not confer standing on each tribe to represent the interests of all Native Americans in North Dakota.

(observing that the "burden [s] of discovery" justify tight restrictions on standing).  The Tribes assert that they have organizational standing and *parens patriae* standing.  Both assertions fail.

### 1. Organizational Standing.

Plaintiffs argue that the Tribes have standing based on alleged diversion of organizational resources.  Pls.' Br., at 6-11.  Citing only one Nevada district court case on point, Plaintiffs state, "[c]ourts have recognized that tribes have standing to bring claims for injuries akin to those suffered by organizations."  *Id.* at 6-7 (citing *S. Fork Band v. U.S. Dep't of Interior*, 643 F. Supp. 2d 1192, 1200 (D. Nev. 2009), *aff'd in part, rev'd in part sub nom., S. Fork Band Council Of W. Shoshone Of Nev. v. U.S. Dep't of Interior*, 588 F.3d 718 (9th Cir. 2009).  However, the case cited by Plaintiffs, *S. Fork Band*, provides no analysis and cites no authority, simply making the conclusory statement that the plaintiff tribes' "standing can be viewed as analogous to organizational standing."  *S. Fork Band*, 643 F. Supp. 2d at 1200.  Further, *S. Fork Band* is inapplicable as that case only discusses standing in the context of a claim by tribes against the federal government under the Religious Freedom Restoration Act, a federal law that includes a waiver of sovereign immunity and grants to tribes the right to bring claims for violations of the Act.  *Id.* at 1200-02, 42 U.S.C.A. § 2000bb-1.  In support of their claim that tribes can establish standing as organizations, Plaintiffs also cite the concurring opinion in *Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez*, 458 U.S. 592 (1982) and *Crawford v. Marion Cty. Election Bd.*, 472 F.3d 949 (7th Cir. 2007), aff'd, 553 U.S. 181, (2008), two cases which do not in any way involve alleged organizational standing of tribes and thus have no applicability.  Pls.' Br., at 7.  Defendant has found no other case law finding a sovereign tribe to be treated as an organization for standing purposes.  With no Eighth Circuit case law finding that sovereign tribes may establish standing in the same manner as private organizations, this Court should not create new standing law simply by analogy to organizational standing applicable to private organizations.

Even if the Tribes had the ability to assert organizational standing, which they do not, the standard is not met in any event.  To establish organizational standing based on diversion of resources, Plaintiffs must allege they suffered "distinct and palpable injuries" that are "fairly traceable" to Defendant's alleged actions.   *Ark. ACORN Fair Hous., Inc. v. Greystone Dev. Ltd. Co.*, 160 F.3d 433, 434 (8th Cir. 1998) (citations and internal quotation marks omitted).  This can be shown where a plaintiff "devote[s] significant resources to identify and counteract a defendant's allegedly unlawful practices."  *Id.* (citations and internal quotation marks omitted).   As discussed in more detail in Defendant's initial brief in support of this motion, the alleged diversion of resources constituted nothing more than typical constituent services provided by sovereign tribes as a liaison to the state, for constituents who failed to obtain updated ID, to which there is no available recoupment from the state in federal court.  Doc. 54, p. 18-23.  The Tribes have no standing to recoup resources they voluntarily expended as sovereign powers.  *Id.*

### 2.    *Parens Patriae*.

Plaintiffs argue that the Tribes have standing to sue on behalf of their members as *parens patriae,* incorrectly asserting that "Native American tribes have the same *parens patriae* standing as states".  Pls.' Br., at 11-18.  In fact, the United States Supreme Court and the Eighth Circuit Court of Appeals have never expressly recognized a tribe as having *parens patriae* standing in any case.  The Eighth Circuit Court of Appeals has previously entertained but rejected arguments for tribal *parens patraie* in individual cases.  Importantly, in its discussion of *parens patriae*, the Eighth circuit and other courts have applied a more restrictive test to Native American tribes than the United States Supreme Court has applied to states.  Plaintiffs rely primarily on *Alfred L. Snapp & Son, Inc.* for the proposition that, in order to establish *parens patriae*, a sovereign must only allege injury to a "sufficiently substantial segment of its population", not an injury to "all" members of the population.  Pls.' Br., at 14 (citing *Alfred L. Snapp*, 458 U.S. at 607).  However, *Alfred L. Snapp* involved a claim of *parens patriae* standing by the Commonwealth of Puerto

Rico, not a tribe.  Throughout the opinion, the United States Supreme Court discussed *parens patriae* standing by states, and the Court held that the Commonwealth of Puerto Rico is similarly situated with the states with respect *parens patriae* standing.  *Alfred L. Snapp*, 458 U.S. at 608, n. 15.  The Court in *Alfred L. Snapp* did not recognize or lay out the specific test for *parens patriae* with respect to tribes.

After the decision in *Alfred L. Snapp*, multiple courts, including the Eighth Circuit Court of Appeals, have discussed *parens patriae* asserted by tribes and found the alleged injury must be to <u>all</u> members of the population, not merely a subset of the population. *U.S. v. Santee Sioux Tribe of Neb.*, 254 F.3d 728, 734 (8th Cir. 2001); *Navajo Nation v. Superior Court of State of Wash. for Yakima Cty.*, 47 F. Supp.2d 1233, 1240 (E.D. Wash. 1999); *Kickapoo Traditional Tribe of Tex. v. Chacon*, 46 F. Supp.2d 644, 651 (W.D. Tex. 1999); *Ala. and Coushatta Tribes of Tex. v. Trustees of Big Sandy Indep. Sch. Dist.*, 817 F. Supp. 1319, 1327 (E.D. Tex. 1993); *Kickapoo Tribe of Okla. v. Lujan*, 728 F. Supp. 791, 795 (D.D.C. 1990).  Plaintiffs ask the Court to distinguish these cases on other grounds, or find them to be in conflict with United States Supreme Court case law in *Alfred L. Snapp*. Pls.' Br., at 15-17.    Indeed, some commentators have suggested that as a matter of policy, Native American tribes should not be treated differently than states when applying the doctrine of *parens patriae*, while recognizing that many courts do in fact treat them differently, requiring that plaintiffs allege injury to all members of the population rather than a "sufficiently substantial segment of its population".   *See* Cami Fraser, *Protecting Native Americans: The Tribe As Parens Patriae*, 5 Mich. J. Race & L. 665, 666 (2000).  While Plaintiffs may believe the better rule of law is that tribes would be treated the same as states under the doctrine of *parens patriae*, the Eighth Circuit Court of Appeals is among the courts subsequent to *Alfred L. Snapp* that explicitly apply a different standard to Native American tribes.  *Santee Sioux*, 254 F.3d at 734.  This Court should not unjustifiably deviate from established Eighth Circuit case law involving a tribe, based on an earlier United States Supreme Court case not involving a tribe.

The Tribes make no allegations on behalf of the many thousands of tribal members not living on or near one of their respective reservations, or on behalf of the members living on the South Dakota side of the Standing Rock Reservation. Even the "sting" of alleged discrimination cannot be said to affect <u>all</u> members of both Tribes, including members not living on a reservation, and many not even living in the State of North Dakota[4]. Doc. 51, ¶ 37. Also, as discussed in Defendant's initial brief in support of this motion, the tribes have not asserted a quasi-sovereign interest. Doc. 54, p. 28-29. Contrary to Plaintiffs' assertions in its brief (Pls.' Br., at 17-18), as to the tribes, the pleadings only include interests in alleged resources spent by the Tribes, not quasi-sovereign interests in health and well-being of residents or the Tribes being denied rightful status in the federal system. Alfred L. Snapp & Son, Inc., 458 U.S. at 607.

### B. All of the Plaintiffs' claims against the Secretary should be dismissed with prejudice because their allegations fail to state a claim.

#### 1. Individual Plaintiffs.

With respect to the Individual Plaintiffs, the Plaintiffs' Brief focuses on the capable of repetition yet evading review standard, which is an exception to the mootness doctrine. Pls.' Br., at 20-28; *Abdurrahman v. Dayton*, 903 F.3d 813, 817 (8th Cir. 2018). "The exception applies if '(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again.'" *Abdurrahman*, 903 F.3. at 817 (quoting *Spencer v. Kemna*, 523 U.S. 1, 17 (1998)). As the parties asserting jurisdiction, the Individual Plaintiffs "bear[] the burden of showing the presence of both requirements." *Id.* (citing *Midwest Farmworker Emp't &Training, Inc. v. U.S. Dep't of Labor*, 200 F.3d 1198, 1201 (8th Cir. 2000)).

While "[e]lection issues are among those most frequently saved from mootness by

---

[4] Standing Rock Sioux Tribe should be dismissed for lack of standing since none of its many members residing in South Dakota could possibly have a claim relating to elections in North Dakota. In this case, Standing Rock Sioux Tribe is not attempting to represent all of its members, or even a sufficiently substantial segment of its population.

this exception", Plaintiffs' reliance on the exception is misplaced, as Plaintiffs have failed to account for the unique election law and documentation at issue in this case. *Missourians for Fiscal Accountability v. Klahr*, 830 F.3d 789, 795 (8th Cir. 2016) (citing *Nat'l Right to Life Political Action Comm. v. Connor*, 323 F.3d 684, 691 (8th Cir. 2003)). Plaintiffs argue the supplemental documentation provided to each of the Individual Plaintiffs, allowing them to vote in the 2018 election, cannot be used to establish mootness or failure to state a claim because the documents are the result of voluntary acts undertaken by the Defendant during this lawsuit.  Pls.' Br., at 20, n. 3 (citing *Lankford v. Sherman*, 451 F.3d 496, 503 (8th Cir. 2006) ("It is well-settled that 'a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice….  The defendant faces a heavy burden of showing that "the challenged conduct cannot reasonably be expected to start up again.") (internal quotation marks omitted).  However, Plaintiff's ignore that the voter ID law at issue in this case includes a catch-all provision, which explicitly contemplates that state officials may issue documents reflecting residential street address to cure voting issues.

While Plaintiffs would have preferred that North Dakota's voter ID law omit a residential street address requirement all together, or allow voters to simply identify their residences on a map in order to vote (Doc. 51, Requested Relief, ¶¶ 1-6), the North Dakota Legislative Assembly required more.  In order to vote in elections in North Dakota, a qualified voter must present a valid form of identification, including the elector's legal name, current residential street address in North Dakota, and date of birth.  N.D. Cent. Code § 16.1-01-04.1(2)(a)-(c).  If the valid form of identification does not contain all of the required information, or the information is not current, the ID can be supplemented with various listed document types.  N.D. Cent. Code § 16.1-01-04.1(3)(b)(1)-(5).  The last of the acceptable supplemental document types is a catch-all: "[a] document issued by a federal, state, or local government."  N.D. Cent. Code § 16.1-01-04.1(3)(b)(5).  This broad catch all only has two requirements for supplemental documentation: 1) it must contain

the required information missing or outdated on the valid ID (current residential street address in this case), and 2) it must be issued by a federal, state, or local government. N.D. Cent. Code §§ 16.1-01-04.1(2)(a)-(c), 16.1-01-04.1(3)(b)(5).  Literally any document that meets these two criteria is sufficient for voting purposes when required information is missing on a valid ID.   The supplemental documentation issued to the Individual Plaintiffs in this case was sufficient for the 2018 election and will continue to be sufficient for all future elections as long as they continue to reside at their current residential addresses.   As to each Individual Plaintiff, supplemental documentation was issued by county auditors and/or the Secretary in advance of the 2018 election and the two criteria for these documents is met for past and future elections.  Doc. 34, 34-1, 34-2, 34-3; Doc. 51, ¶¶ 75, 103, 117.  North Dakota's voter ID law is flexible enough to give federal, state, and local officials the power to cure issues for individual voters with a simple letter or any other document, which is what happened with respect to the Individual Plaintiffs.  While the documentation was issued after the commencement of this lawsuit, when the Individual Plaintiffs presented themselves, there is no allegation that supplemental documentation was unsuccessfully sought from applicable county auditors or 911 coordinators prior to commencing suit.  The Individual Plaintiffs are suing the Secretary for his application of North Dakota's voter ID law to them, even though he promptly acted in accordance with the catch-all provision in North Dakota law to ensure the Individual Plaintiffs had all the documentation they needed to vote in the 2018 and subsequent elections.

In any event, with respect to the Individual Plaintiffs, there is no "reasonable expectation that the same complaining part[ies] will be subject to the same action again", and they have thus failed to meet their burden to establish that their claims are saved by the capable of repetition yet evading review standard.  *Abdurrahman*, 903 F.3. at 817. While the Individual Plaintiffs are not required to prove a recurrence of the dispute is more probable than not, they must still show that the dispute is capable of repetition and there must be a reasonable expectation that it will be repeated.  *Klahr*, 830 F.3d at 795;

*Abdurrahman*, 903 F.3. at 817.  The Individual Plaintiffs rely on pure speculation that one day they may lose their documentation[5] or may move to another residence within a reservation with the exact same residential street address issue alleged in this lawsuit, and have the 911 coordinator, county auditor, or other government official refuse to give new supplemental documentation (or otherwise not have access to supplemental documentation).  Even a liberal reading of the Individual Plaintiffs' allegations in their pleadings do not make it reasonably likely that these specific plaintiffs will run into voting issues related to their residential street address.  No Individual Plaintiff has alleged that he or she has any plans to move or that a move is intended to a location with a residential street address issue.

### 2.   Spirit Lake and Standing Rock.

The Tribes do not dispute that they lack any right to bring constitutional or Voting Rights Act claims on their own behalf because they are not "persons" or "citizens of the United States".  Doc. 55, p. 18.  Rather, to assert they have stated a claim, the Tribes rely solely on their seeking to vindicate the rights of their members.  This argument fails for the reasons discussed above with respect to organizational and *parens patraie* standing. The Tribes have no right to sue on behalf of their members in this case.

Dated this 21st day of August, 2019.

State of North Dakota
Wayne Stenehjem
Attorney General

By:   /s/  Matthew A. Sagsveen
      Matthew A. Sagsveen
      Solicitor General
      State Bar ID No. 05613
      Office of Attorney General
      500 North 9th Street
      Bismarck, ND 58501-4509
      Telephone (701) 328-3640
      Facsimile (701) 328-4300
      Email masagsve@nd.go

By:   /s/  David R. Phillips
      David R. Phillips
      Assistant Attorney General
      State Bar ID No. 06116
      Office of Attorney General
      500 North 9th Street
      Bismarck, ND 58501-4509
      Telephone (701) 328-3640
      Facsimile (701) 328-4300
      Email drphillips@nd.gov

Attorneys for Defendant.

---

[5] In which case, they could ask state officials for another copy, or simply obtain copies from their own attorneys.