IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| Spirit Lake Tribe, on its own behalf and on behalf of its members, Standing Rock Sioux Tribe, on its own behalf and on behalf of its members, Dion Jackson, Kara Longie, Kim Twinn, Terry Yellow Fat, Leslie Peltier, and Clark Peltier, <br><br>  Plaintiffs, <br><br> vs. <br><br> Alvin Jaeger, in his official capacity as Secretary of State, <br><br>  Defendant. | **ORDER DENYING DEFENDANT'S MOTION TO DISMISS** <br><br><br><br><br><br><br><br><br><br> Case No. 1:18-cv-222 |

Before the Court is the Defendant's motion to dismiss the Plaintiffs' second amended complaint filed on July 17, 2019. See Doc. No. 53. The Plaintiffs filed a response in opposition to the motion on August 7, 2019. See Doc. No. 55. The Defendant filed a reply brief on August 21, 2019. See Doc. No. 56. For the reasons below, the motion is denied.

### I.   BACKGROUND

The Plaintiffs commenced this declaratory judgment action against Defendant Alvin Jaeger, in his official capacity as the North Dakota Secretary of State ("Secretary") on October 30, 2018, seven days before the November 6, 2018, general election. See Doc. No. 1. The Plaintiffs alleged the Secretary's implementation of N.D.C.C. §§ 16.1-01-04.1(2)(b) and 3(b) violated their rights

1

under the First and Fourteenth Amendments to the United States Constitution. See Doc. No. 1.

North Dakota residents desiring to vote are required by N.D.C.C. §§ 16.1-01-04.1 to provide a valid form of identification to proper election officials before receiving a ballot. The identification must include the voter's name, current residential street address, and date of birth. If the identification has missing or outdated information, the voter can provide supplemental documentation which includes the missing information. Acceptable supplemental documentation includes a current utility bill, current bank statement, check issued by a federal, state, or local government, paycheck, or a document issued by a federal, state, or local government. Valid forms of identification include a North Dakota driver's license, a North Dakota nondriver's identification card, or an official form of identification issued by a tribal government to a tribal member residing in the state.

On October 31, 2018, Plaintiffs filed an emergency motion for a temporary restraining order, asking the Court to enjoin the proof of residential street address requirement. See Doc. Nos. 8 and 9. The Court denied the motion on November 1, 2018, in light of the decision of the Eighth Circuit Court of Appeals in the related voting rights case, *Brakebill v. Jaeger*, 905 F.3d 553 (8th Cir. 2018), and to preserve the status quo because election day was fast approaching and early voting had already begun. See Doc. No. 33.

On November 2, 2018, the Secretary and the Plaintiffs entered into a stipulation that resolved any actual or perceived irregularities regarding the individual Plaintiffs' addresses and the addresses maintained in the Central Voter File and poll books. See Doc. No. 34. The Court entered an order adopting the stipulation on November 2, 2018. See Doc. No. 35. All six individual Plaintiffs were able to vote in the November 6, 2018, election. See Doc. No. 51, ¶¶ 77, 94, 104, 118.

On January 7, 2019, the Secretary filed a motion to dismiss. See Doc. Nos. 38 and 39. In

lieu of a response, and with the consent of the Secretary and the Court, the Plaintiffs filed an amended complaint on February 28, 2019. See Doc. No. 43.

On March 21, 2019, the Secretary filed a motion to strike portions of the amended complaint. See Doc. Nos. 44 and 45. The Court granted the Secretary's motion to strike on June 17, 2019, striking references to other cases and granting the Plaintiffs leave to file a second amended complaint. See Doc. No. 50. The Plaintiffs filed their second amended complaint on June 20, 2019. See Doc. No. 51. In the second amended complaint, the Plaintiffs make an as applied challenge to N.D.C.C. § 16.1-01-04.1. They allege irregularities exist with respect to their residential addresses and their voting addresses maintained by the State, and these irregularities violate Section 2 of the Voting Rights Act and the First, Fourteenth, and Fifteenth Amendments to the United States Constitution.

The second amended complaint contains six causes of action. Count I alleges N.D.C.C. § 16.1-01-04.1 causes an undue burden on the Plaintiffs' right to vote in violation of the Fourteenth Amendment. Count II alleges N.D.C.C. § 16.1-01-04.1 causes an undue burden on the Plaintiffs right to vote in violation of the First Amendment. Count III alleges N.D.C.C. § 16.1-01-04.1 causes arbitrary disenfranchisement of the Plaintiffs in violation of the Fourteenth Amendment. Count IV is omitted. Count V alleges N.D.C.C. § 16.1-01-04.1 causes intentional discrimination in voting on account of race in violation of Section 2 of the Voting Rights Act. Count VI alleges N.D.C.C. § 16.1-01-04.1 has a discriminatory effect in voting on account of race in violation of Section 2 of the Voting Rights Act. Count VII alleges N.D.C.C. § 16.1-01-04.1 violates the Plaintiffs' Fourteenth and Fifteenth Amendment rights because its purpose and effect is to deny the Plaintiffs the right to vote on account of race.

The individual Plaintiffs fear they may not be allowed to vote in future elections. See Doc.

No. 51, ¶¶ 77-80, 94-96, 104, 105, and 118-121. Plaintiff Dion Jackson alleges his rights were violated because his absentee ballot was rejected by the Benson County Auditor before the November 6, 2018, election. See Doc. No. 51, ¶ 57. Plaintiff Kim Twinn contends her residential street address is not listed on any of her forms of identification and she does not have other documentation to establish it. See Doc. No. 51, ¶¶ 100, 101. Plaintiff Terry Yellow Fat claims the residential street address provided by a 911 coordinator is not his actual address. See Doc. No. 51, ¶¶ 108-111. The other individual Plaintiffs allege their rights were violated because the Secretary's online search tool did not list their exact or correct address. See Doc. No. 51, ¶¶ 58, 71, 90. The Spirit Lake Tribe and the Standing Rock Sioux Tribe contend N.D.C.C. § 16.1-01-04.1 cause them injury based on their own expenditure of funds and diversion of resources to educate their members about the new law and provide them new conforming IDs. See Doc. No. 51, ¶¶ 19 and 40. The Tribes also assert claims on behalf of their members as *parens patriae*. See Doc. No. 51, ¶¶ 16 and 37.

The second amended complaint seeks prospective injunctive and declaratory relief for the Plaintiffs and other voters in certain North Dakota counties where Indian reservations are present. See Doc. No. 51, pp. 62-63. Specifically, Plaintiffs are seeking a declaratory judgment that N.D.C.C. §§ 16.1-01-04.1(2)(b) and 3(b) violate the First, Fourteenth, and Fifteenth Amendments to the United States Constitution and Section 2 of the Voting Rights Act as applied to a class of voters in Benson, Dunn, Eddy, McLean, Mercer, Mountrail, Nelson, Ramsey, Richland, Rolette, Sargent, and Sioux Counties who fall under the following categories: (1) voters with IDs with residential addresses that the State considers "invalid"; (2) voters with no access to an accurate residential address to place on a qualifying ID; (3) voters with no access to documentation of their residential address; (4) voters whose addresses are unassigned; and (5) voters unable to determine

their address and obtain a qualifying ID. The Plaintiffs seek an injunction barring the Secretary from enforcing N.D.C.C. §§ 16.1-01-04.1(2)(b) and 3(b) as to the above class of voters. In the alternative, the Plaintiffs seek an injunction barring the Secretary from enforcing N.D.C.C. §§ 16.1-01-04.1(2)(b) and 3(b) and in lieu of those statutes, voters would be allowed to identify their residences on a precinct map to verify their eligibility to vote. The Plaintiffs seek the same relief with respect to N.D.C.C. §§ 16.1-01-04.1(1) as to voters in the above-listed counties who cannot reasonably obtain qualifying identification, or in the alternative, allowing such voters to affirm their identity by signing an affidavit. The Plaintiffs also seek appointment of federal observers by the director of the Office of Personnel Management in accordance with Sections 3 and 8 of the Voting Rights Act, and an order pursuant to Section 3(c) of the Voting Rights Act, retaining jurisdiction for such period of time as may be appropriate, and requiring preclearance of voting changes by the State of North Dakota.

Now before the Court is the Secretary's Rule 12(b)(6) motion to dismiss. In his motion, the Secretary contends the Spirit Lake Tribe and the Standing Rock Sioux Tribe (collectively "Tribes") lack standing and the Plaintiffs' second amended complaint fails to state a claim upon which relief may be granted.

## II.  LEGAL DISCUSSION

### A.  STANDING

The Secretary contends the Tribes lack standing as they have not suffered an injury. The Tribes contend they have standing in their own right and they also have associational standing and standing as *parens patriae*. The standing of the individual Plaintiffs is not challenged and any such challenge would be unsuccessful. See Brakebill v. Jaeger, 932 F.3d 671, 676-77 (8th Cir. 2019)

(finding individual Plaintiffs had standing to challenge voter ID law as the requirement they obtain new conforming ID was an injury which confers standing to sue).

Article III of the United States Constitution limits the subject matter jurisdiction of federal courts to "cases" and "controversies." U.S. Const. art. III, § 2. This jurisdictional limitation requires every plaintiff to demonstrate it has standing when bringing an action in federal court. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992). "It is the responsibility of the complainant clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers." Warth v. Seldin, 422 U.S. 490, 518 (1975). The essence of standing is whether the party invoking federal jurisdiction is entitled to have the court decide the merits of the dispute. Id. at 498.

"[T]he irreducible constitutional minimum of standing contains three elements: First, the plaintiff must have suffered an 'injury in fact' ... Second, there must be a causal connection between the injury and the conduct complained of – the injury has to be 'fairly ... trace[able] to the challenged action of the defendant' ... Third, it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" Sierra Club v. Robertson, 28 F.3d 753, 757-58 (8th Cir. 1994) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)).

To show an injury-in-fact, a plaintiff must show "an invasion of a legally-protected interest which is (a) concrete and particularized and (b) actual and imminent, not conjectural or hypothetical." Id. Merely alleging an injury related to some cognizable interest is not enough; rather, a plaintiff "must make an adequate showing that the injury is actual or certain to ensue." Id.

A plaintiff's standing is distinct from the merits of the plaintiff's cause of action. Am. Farm Bureau Fed'n v. U.S. Envtl. Prot. Agency, 836 F.3d 963, 968 (8th Cir. 2016). Where there are multiple plaintiffs and multiple claims, at least one plaintiff must demonstrate standing for each

claim and each form of relief being sought. Town of Chester, N.Y. v. Laroe Estates, Inc., 137 S. Ct. 1645, 1650-51 (2017). If a plaintiff lacks Article III standing, a federal court has no subject-matter jurisdiction over the claim and the court must dismiss the action. Higgins Elec., Inc. v. O'Fallon Fire Prot. Dist., 813 F.3d 1124, 1128 (8th Cir. 2016).

The Tribes allege they have been forced to divert resources to ensure their members have an ID which complies with the requirements of N.D.C.C. § 16.1-01-04.1. They further allege these expenditures are ongoing and substantial both in terms of time and money. "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim" Lujan, 504 U.S. at 561.

It is well-established that an organization has standing in its own right to challenge an election law when it expends or diverts resources to educate voters about the new law or assist them in complying with the new law. See Nat'l Council of La Raza v. Cegavske, 800 F.3d 1032, 1040-41 (9th Cir. 2015) (finding three civil rights organizations had standing to challenge Nevada laws implementing the National Voter Registration Act); Arcia v. Fla. Sec'y of State, 772 F.3d 1335, 1341 (11th Cir. 2014) (finding three organizations had standing to challenge Florida's efforts to remove the names of ineligible voters from state voter rolls); Common Cause/Ga. v. Billups, 554 F.3d 1340, 1350 (11th Cir. 2009) (finding the NAACP had standing to challenge a Georgia law requiring voters to present photo ID before voting); Crawford v. Marion Cty. Election Bd., 472 F.3d 949, 951 (7th Cir. 2007), aff'd, 553 U.S. 181 (2008) (finding the Democratic Party had standing to challenge an Indiana law which required a photo ID in order to vote). As the law is well-established and the second amended complaint details the diversion-of-resources injuries incurred by the Tribes, the Court has no difficulty concluding they have standing to challenge the residential street address

requirement in N.D.C.C. § 16.1-01-04.1.  Having determined that the Tribes have standing on a diversion of resources basis, the Court need not determine whether they have associational standing or standing as *parens patriae*.  See Billups, 554 F.3d at 1351.

### B.      FAILURE TO STATE A CLAIM

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Rule 12(b)(6) of the Federal Rules of Civil Procedure mandates the dismissal of a claim if there has been a failure to state a claim upon which relief can be granted.  In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotations omitted).  A plaintiff must show that success on the merits is more than a "sheer possibility."  Id.  A complaint does not need detailed factual allegations, but it must contain more than labels and conclusions.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

The court must accept all factual allegations of the complaint as true, except for legal conclusions or "formulaic recitation of the elements of a cause of action."  Iqbal, 556 U.S. at 678.  A complaint does not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  Id.  The determination of whether a complaint states a claim upon which relief can be granted is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id. at 679.  Dismissal will not be granted unless it appears beyond doubt the plaintiff can prove no set of facts entitling him to relief.  Ulrich v. Pope Cty., 715 F.3d 1054, 1058 (8th Cir. 2013).  The burden is on the moving party to prove that no legally cognizable claim for relief exists.  5B Wright & Miller, Federal Practice and Procedure § 1357 (3d ed. 2004);

8

Mediacom Se. LLC v. BellSouth Telecomms., Inc., 672 F.3d 396, 399 (6th Cir. 2012) (the moving party bears the burden on a Rule 12(b)(6) motion).

### 1. **THE TRIBES**

The Secretary raises two arguments in support of his contention that the Tribes have failed to state a claim upon which relief may be granted. First, the Secretary contends the Tribes are not "persons" or "citizens of the United States" and therefore are not entitled to bring the constitutional or Voting Rights Act ("VRA") claims asserted in this lawsuit. Second, the Secretary contends that the Tribes cannot state claims to recover the money they voluntarily expended assisting their members with efforts to comply with North Dakota's voter ID law. Both contentions fail.

Because the first argument does not test the sufficiency of the second amended complaint but rather attacks the right of the Tribes to bring this action, it is in reality another attack on the Tribes' standing. Standing is "[a] right to make a legal claim or seek judicial enforcement of a duty." *Standing*, Black's Law Dictionary (7th ed. 1999). The Court has already determined the Tribes have standing. The Tribes are not alleging they suffer a burden on their own right to vote but rather they have an interest in protecting their tribal members' right to vote. To be sure, the Tribe's have alleged an injury to themselves, but the rights they seek to vindicate belong to their members. Since the Tribes have standing they may attempt to vindicate the rights of their members which they contend have been injured by North Dakota's voter ID law.

In the many, if not most, voting rights cases an organization is one of the parties to the lawsuit. See Nat'l Council of La Raza, 800 F.3d at 1040-41 (finding three civil rights organizations had standing to challenge Nevada laws implementing the National Voter Registration Act); Arcia, 772 F.3d at 1341 (finding three organizations had standing to challenge Florida's efforts to remove

the names of ineligible voters from state voter rolls); Common Cause/Ga., 554 F.3d at 1350 (finding the NAACP had standing to challenge a Georgia law requiring voters to present photo ID before voting); Crawford, 472 F.3d at 951 (finding the Democratic Party had standing to challenge an Indiana law which required a photo ID in order to vote).

      The Court can see no reason why a federally recognized Indian Tribe would not have standing to sue to protect the voting rights of its members when private organizations like the NAACP and political parties are permitted to do so.  See United States v. Mazurie, 419 U.S. 544, 557 (1975) (Tribes "are a good deal more than 'private, voluntary organizations.'"); Spirit Lake Tribe v. Benson Cty., No. 2:10-cv-095, 2010 WL 4226614, (D.N.D. Oct. 21, 2010) (granting preliminary injunction to the Spirit Lake Tribe which brought suit to protect its citizens from violations of the Fourteenth and Fifteenth Amendments as well as Section 2 of the VRA); Navajo Nation v. San Juan Cty., 929 F.3d 1270 (10th Cir. 2019) (Navajo Nation pursuing claims under the Fourteenth Amendment and Section 2 of the VRA).  More important, three of the Individual Plaintiffs (Dion Jackson, Kara Longie, Terry Yellow Fat) are members of the either the Spirit Lake Tribe or the Standing Rock Sioux Tribe and the Court has already determined they have standing in their own right.  See Navajo Nation v. San Juan Cty., 150 F. Supp. 3d 1253, 1260 (D. Utah 2015), aff'd, 929 F.3d 1270 (10th Cir. 2019) (noting there was no serious rebuttal to the contention the Navajo Nation had standing in a VRA case).  It is sufficient if one plaintiff has standing to pursue each claim raised.  See Jones v. Gale, 470 F.3d 1261, 1265 (8th Cir. 2006) (noting that "where one plaintiff establishes standing to sue, the standing of the other plaintiffs is immaterial to jurisdiction").

      The second argument, that the Tribes cannot state claims to recover the money they voluntarily expended assisting their members with efforts to comply with North Dakota's voter ID

law, also fails as the Tribes do not seek money damages but rather only seek injunctive relief. The Secretary cites no case law for the proposition that actions voluntarily taken in response to a law do not constitute an injury. Quite the opposite is true. See Common Cause/Ga., 554 F.3d at 1350.

### 2. INDIVIDUAL PLAINTIFFS

The Secretary contends the individual Plaintiffs have failed to state a claim because they were all allowed to vote in the 2018 election and, with some effort on their part, can vote in the 2020 election. The individual Plaintiffs contend the current residential address requirement in North Dakota's voter ID law constitutes an undue burden on their right to vote and is discriminatory in violation of Section 2 of the VRA and the First, Fourteenth, and Fifteenth Amendments. Two of the Plaintiffs' claims are brought pursuant to the VRA while the other four allege constitutional violations.

Despite bearing the burden of proof on a motion to dismiss, the Secretary does not identify or analyze the elements of each claim, the legal standards which apply, or provide any explanation as to how the second amended complaint fails to state a claim. See Ross v. United States Capitol Police, 195 F. Supp. 3d 180, 192 (D.D.C. 2016) (noting Rule 12(b)(6) places the burden on the moving party to show that the complaint is legally insufficient). Rather, the Secretary simply argues that since the individual Plaintiffs voted in the 2018 election and "self-help" options are available, they have failed to state a claim.

The Plaintiffs allege, among other things, that the burden which the voter ID law imposes on them is undue and severe and have backed up that assertion with factual allegations which the Court must accept as true. The second amended complaint is detailed and lengthy and goes well-beyond notice pleading. The Court must accept the factual allegations in the second amended

complaint as true at this stage of the case. There can be no dispute the voter ID law places some burden on the individual Plaintiffs. Brakebill, 932 F.3d at 677. Claims I and II allege an undue burden. The relative burdens placed upon the Individual Plaintiffs by the ID requirement are the crux of these claims. The "self-help" options cited by the Secretary are certainly relevant to the final analysis but are not a proper basis for granting a motion to dismiss at this stage. Claims V and VII allege intentional discrimination on the part of the Legislature in passing the voter ID law. Yet the Secretary makes no mention of these claims and does not discuss why the claims are insufficient. The same can be said for claims III and VI. The Court is unpersuaded, at least at this stage of the case, that the fact the individual Plaintiffs were able to vote in the 2018 election forecloses their claims of intentional discrimination.

This is a complex voting rights case. The Secretary has failed to carry his burden of demonstrating how each of the six claims is insufficient. After a careful review of the detailed allegations in the second amended complaint, the Court cannot say the individual Plaintiffs have failed to state a claim upon which relief may be granted.

### C.     ELEVENTH AMENDMENT IMMUNITY

The Secretary makes a fleeting attempt to claim Eleventh Amendment immunity but acknowledges the suit may go forward as long as only injunctive relief is sought. It is clear from the second amended complaint, and the Plaintiffs' response to the Secretary's motion to dismiss, that the only relief sought is injunctive in nature. As such, the Secretary cannot claim Eleventh Amendment immunity. See Ex Parte Young, 209 U.S. 123 (1908).

In addition, the Eleventh, Fifth, and Sixth Circuits have held that Congress validly abrogated State sovereignty in the VRA. See Mixon v. Ohio, 193 F.3d 389, 398–99 (6th Cir. 1999) (holding

Congress intended to abrogate State sovereign immunity under the VRA because it specifically prohibits a State or political subdivision from discriminating against voters on the basis of race); OCA-Greater Hous. v. Texas, 867 F.3d 604, 614 (5th Cir. 2017) (holding the VRA abrogated State sovereign immunity); Ala. State Conference of Nat'l Ass'n for the Advancement of Colored People v. Alabama, No. 17-14443, 2020 WL 525153, at *3 (11th Cir. Feb. 3, 2020) (same).

### III. CONCLUSION

Accordingly, and for the reasons set forth above, the Defendant's motion to dismiss the second amended complaint (Doc. No. 53) is **DENIED**.

**IT IS SO ORDERED.**

Dated this 10th day of February, 2020.

>  */s/  Daniel L. Hovland*
> Daniel L. Hovland, District Judge
> United States District Court