**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NORTH DAKOTA**
**WESTERN DIVISION**

| | |
|---|---|
| **SPIRIT LAKE TRIBE, on its own behalf and on behalf of its members, STANDING ROCK SIOUX TRIBE, on its own behalf and on behalf of its members, DION JACKSON, KARA LONGIE, KIM TWINN, TERRY YELLOW FAT, LESLIE PELTIER,CLARK PELTIER,** <br> **Plaintiffs,** <br> **v.** <br> **ALVIN JAEGER, in his official capacity as Secretary of State,** <br> **Defendant.** | **Lead Case No. 1:18-cv-00222** |
| **RICHARD BRAKEBILL, DELLA MERRICK, ELVIS NORQUAY, RAY NORQUAY, and LUCILLE VIVIER, on behalf of themselves,** <br> **Plaintiffs,** <br> **v.** <br> **ALVIN JAEGER, in his official capacity as Secretary of State,** <br> **Defendant.** | **Consolidated Case No. 1:16-cv-8** <br><br> **CONSENT DECREE AND JUDGMENT** |

## BACKGROUND

Richard Brakebill ("Brakebill"), Della Merrick ("Merrick"), Elvis Norquay, Ray Norquay, Lucille Vivier ("Vivier"), and additional plaintiffs Deloris Baker and Dorothy Herman who were later dismissed, commenced an action against the North Dakota Secretary of State Alvin A. Jaeger, in his official capacity (hereinafter "Secretary of State") in January of 2016 in the United States District Court, District of North Dakota, Case No. 1:16-cv-00008 (hereinafter "Brakebill Case"). In their pleadings, Brakebill, Merrick, Elvis Norquay, Ray Norquay, and Vivier allege that North Dakota's voter ID law, N.D. Cent. Code § 16.1-01-04.1 as amended, violates Section 2 of the Voting Rights Act (42 U.S.C.

§1973), the 14th and 15th Amendments to the United States Constitution, and Article I and Article II of the North Dakota Constitution.

Spirit Lake Tribe, Dion Jackson ("Jackson"), Kara Longie ("Longie"), Kim Twinn ("Twinn"), Terry Yellow Fat ("Yellow Fat"), Leslie Peltier, and Clark Peltier commenced an action against the Secretary of State in October of 2018 in the United States District Court, District of North Dakota, Case No. 1:18-cv-00222 (hereinafter "Spirit Lake Case"). Standing Rock Sioux Tribe later joined the Spirit Lake Case as a plaintiff.  Spirit Lake Tribe and Standing Rock Sioux Tribe are hereinafter collectively referred to as "Plaintiff Tribes".  The Plaintiff Tribes made claims on their own behalf and on behalf of their members.  The Plaintiffs in the Spirit Lake Case alleged the Secretary of State violated the voting rights guaranteed by Section 2 of the Voting Rights Act (42 U.S.C. §1973), and the 1st, 14th and 15th Amendments to the United States Constitution.  The Plaintiffs alleged that the North Dakota Legislative Assembly's enactment of N.D. Cent. Code § 16.1-01-04.1 and the Secretary's implementation of the statute violated their voting rights and the rights of their members.

Brakebill, Merrick, Elvis Norquay, Ray Norquay, Vivier, Jackson, Longie, Twinn, Yellow Fat, Leslie Peltier, and Clark Peltier are hereafter referred to as the "Individual Plaintiffs".  The Individual Plaintiffs and the Plaintiff Tribes in the Brakebill Case and the Spirit Lake Case generally allege that it is more burdensome for Native American voters, in comparison to non-Native American voters, to obtain a valid form of identification and supplemental documentation under North Dakota's voter ID law due to alleged higher rates of poverty, further average distance from Department of Transportation licensing sites, unreliable, unknown, or unaddressed residential street addresses on reservations,

higher levels of homelessness, and similar alleged factors. The Plaintiffs in both cases allege that the voter ID and residential address requirements as enacted have the purpose and effect of discriminating against Native American voters. The Plaintiff Tribes also allege they have incurred additional costs and administrative burdens relating to providing tribal IDs for voting purposes. Plaintiffs in both the Brakebill and Spirit Lake cases dispute that their cases are mooted due to the emergency enactment of N.D.A.C. §§ 72-06-03-01 through 72-06-03-05 and assert that all Plaintiffs have standing.

The Secretary of State denies the Plaintiffs' allegations in both the Brakebill Case and the Spirit Lake Case, and asserts that no disenfranchisement, discrimination, or any other violation of a right has occurred with respect to North Dakota's voter ID law or the Secretary of State's implementation of the law. Further, due to the emergency enactment of N.D.A.C. §§ 72-06-03-01 through 72-06-03-05, the Secretary of State asserts that the Plaintiffs' claims in both cases are moot. The Secretary of State also asserts that the Plaintiffs do not have standing. The Secretary of State asserted various additional defenses to the Complaints in both cases.

Brakebill, Merrick, Elvis Norquay, Ray Norquay, Vivier, Jackson, Longie, Twinn, Yellow Fat, Leslie Peltier, Clark Peltier, Spirit Lake Tribe, Standing Rock Sioux Tribe, and the Secretary of State are hereafter collectively referred to as "the Parties". In order to avoid a prolonged, expensive and potentially divisive litigation, all of the Parties have agreed to a compromise settlement of all of the issues in both the Brakebill Case and the Spirit Lake Case, with the exception of the pending issue of attorney's fees in the Brakebill Case already before the Court and addressed in more detail below. The Court has consolidated the Brakebill Case and the Spirit Lake Case for settlement purposes so that

this Consent Decree and Judgment may be entered in both the Brakebill Case and the Spirit Lake Case.

## ATTORNEYS' FEES AND COSTS

The Plaintiffs in the Brakebill Case filed Plaintiffs' Motion for Extension of Time to File for Attorney's Fees and Costs (Doc. 1:16-cv-00008 105) on April 16, 2018, seeking an extension on the time to determine fees and costs relating to the Plaintiffs' first Motion for Preliminary Injunction (Doc. 1:16-cv-00008 44). The Court denied the motion on mootness grounds based upon D.N.D. Civ. L.R. 54.1. Doc. 1:16-cv-00008 106. Plaintiffs in the Brakebill Case then filed Plaintiffs' Motion for Attorneys' Fees and Costs (Doc. 1:16-cv-00008 107) on April 17, 2018, seeking the recovery of $1,132,459.41 relating to the Plaintiffs' first Motion for Preliminary Injunction (Doc. 1:16-cv-00008 43, Doc. 1:16-cv-00008 44), which the Secretary of State opposed (Doc. 1:16-cv-00008 108, Doc. 1:16-cv-00008 113). The Court has not yet ruled on Plaintiffs' Motion for Attorneys' Fees and Costs (Doc. 1:16-cv-00008 107). The $1,132,459.41 sought for recovery by the Plaintiffs in Doc. 1:16-cv-00008 107 in the Brakebill Case is hereinafter referred to as the "Pending Brakebill Attorney's Fees Claim".

With the sole exception of the Pending Brakebill Attorney's Fees Claim, all Plaintiffs in both the Brakebill Case and the Spirit Lake Case have as part of the settlement expressly waived any and all right they may have to the recovery from the Secretary of State or from any other North Dakota official or entity for any costs or attorney's fees they would be entitled as prevailing parties or otherwise entitled to. This waiver does not extend to any future litigation that may arise regarding the enforcement

4

of this Global Settlement and Consent Decree or any future controversy among the Parties.

The Parties have agreed as part of their settlement that the Pending Brakebill Attorney's Fees Claim shall be resolved by the Court.  The Parties agreed that their settlement and this Consent Decree are not intended to in any way affect the outcome of the Court's decision regarding the Pending Brakebill Attorney's Fees Claim.  The Plaintiffs in the Brakebill Case have expressly waived any argument or claim that the Secretary of State's act of entering into the settlement or any act taken pursuant to the settlement and/or Agreement entitles Plaintiffs to attorney's fees or costs with respect to Pending Brakebill Attorney's Fees Claim or any other attorney's fees or costs. The Secretary of State likewise has expressly waived any argument or claim that the Parties' entering into the settlement and the Agreement or that any act taken pursuant to the settlement and/or the Agreement affects the outcome of the fee petition.

## FACTUAL STIPULATIONS OF THE PARTIES

1.     The Plaintiff Tribes are federally recognized Native American Tribes, which govern tribal reservation lands located within North Dakota.  The Plaintiff Tribes are each governed by a Tribal Council.  Each of the Individual Plaintiffs is a member of a federally recognized Native American Tribe, resides in North Dakota, and is a qualified elector eligible to vote in local, state, and federal elections in North Dakota.

2.     Defendant Alvin A. Jaeger is the duly elected North Dakota Secretary of State, with the statutory duty to supervise election procedures, pursuant to N.D. Cent. Code

§ 16.1-01-01 and other applicable law. The Secretary of State has been named in these actions in his official capacity.

3.     As a full, final and complete settlement of these matters, and pursuant to a Global Settlement Agreement, all of the Parties to these cases have agreed that the Court may enter a Consent Decree and Judgment containing the terms as set forth below. The Parties reached their agreement with the understanding that neither the Global Settlement Agreement nor this Consent Decree and Judgment is an adjudication on the merits and nothing contained in this document shall be construed as an admission or acknowledgment by the Secretary that he has engaged in a discriminatory act or violated the rights of anyone.

## CONSENT DECREE AND JUDGMENT

1.     As used throughout this document, the term "Tribal Government" shall have the definition established in N.D.A.C. § 72-06-03-01(3) as defined on the date the Consent Decree is entered. The terms "tribal identification" and "supplemental documentation" shall include the documentation described in N.D.A.C. §§ 72-06-03-02, 72-06-03-04, on the date the Consent Decree is entered. Nothing in the Consent Decree shall preclude the Secretary of State from recognizing additional forms of tribal ID and supplemental documentation pursuant to a) future agreement of the Parties or b) future administrative or legislative enactment.

2.     This Court has jurisdiction over these actions pursuant to 28 U.S.C. §§ 1331, 1343, 1362, 1367, and 52 U.S.C. § 10308(f).

3.     Entry of this Consent Decree shall constitute final judgment in the Brakebill and Spirit Lake cases, notwithstanding the pending Plaintiffs' Motion for Attorneys'

Fees and Costs in the Brakebill Case (Doc. 1:16-cv-00008 107). However, after final judgment is entered, the Court will retain jurisdiction over the Global Settlement Agreement and this Consent Decree for the purpose of enforcing both the Settlement Agreement and the Consent Decree. If a dispute arises between the Parties relating to the implementation of the terms of this Consent Decree, the Parties shall confer in good faith in an attempt to resolve the dispute without Court involvement. If the Parties are unable to resolve the dispute through good faith conferral, the dispute may be presented to the Court by motion for resolution by the Court. The dispute resolution process described in this paragraph is intended to enforce the overall implementation of this Consent Decree with respect to voter ID related processes and procedures in North Dakota. The Court only has the jurisdiction to enforce the Consent Decree, not garden-variety election administration errors. It will be up to the Court to make a determination about when complaints constitute a violation of the Consent Decree.

4.      The Secretary of State recently promulgated administrative rules, Chapter 72-06-03 of the North Dakota Administrative Code, entitled Tribal Identification for Voting, which were approved by the Governor on February 4, 2020 for immediate emergency effectiveness (hereinafter "Rules"). Should the Secretary of State seek to amend the Rules, the Secretary of State shall confer in good faith with the tribal councils of the tribes located in North Dakota about such amendments before the amendments are promulgated.

5.      Plaintiffs waive any rights they may have to the recovery of attorney's fees and costs from the Secretary of State or from any other North Dakota official or entity

in both the Brakebill and Spirit Lake cases, except the amount already sought by motion in the Pending Brakebill Attorney's Fees Claim. The excepted amount is not resolved by the Consent Decree; it remains in dispute and shall be decided by the Court. This waiver is limited to the recovery of fees and costs Plaintiffs would be entitled as prevailing parties in these matters. This waiver does not extend to any future litigation that may arise regarding the enforcement of this Global Settlement and Consent Decree or any future controversy among the parties.

6.    The Secretary of State shall recognize tribal IDs and supplemental documentation issued to tribal members and to non-member residents who are qualified electors living within the Tribal Government's jurisdiction.

7.    The designation by a Tribal Government of a voter's current residential street address within the Tribal Government's jurisdiction, is valid and conclusive for purposes of voting. The Secretary of State shall also work with county 911 coordinators to encourage the coordinators and the Tribal Governments to assist one another and cooperate to identify the 911 street addresses for the physical location of residences within the Tribal Government's jurisdiction and share information about any addresses designated by the Tribal Government.

8.    The Secretary of State shall ensure that Tribal Governments are provided with county-approved precinct maps for the precincts that include land within the Tribal Government's jurisdiction at least 50 days prior to a statewide election.

9.    The Secretary of State shall incorporate the information addressed by this Consent Decree and the Rules, as applicable, into state materials for public education, poll

worker training, the absentee ballot application form, and guidance to county auditors, including the election manual.

10.     The Secretary of State shall create and distribute sample forms for the Tribal Governments to use as templates for tribal ID or supplemental documentation forms and keep these templates available on the Secretary of State's website. At the request of any Tribal Government, the Secretary of State shall make available, free-of-charge, tribal ID forms and supplemental documentation forms, for use by Tribal Governments.

11.     The Secretary of State shall work in good faith with the Indian Affairs Commission and the Department of Transportation ("DOT") to develop and implement a program of distributing free nondriver photo identification cards on all North Dakota reservations within 30 days in advance of statewide elections, arranged in consultation with the Tribal Governments.

12.     The Secretary of State shall work in good faith with the Office of Management and Budget and the Governor's Office to identify existing appropriations to reimburse Tribal Governments in North Dakota for the administrative costs of issuing addresses and IDs for voting purposes for the 2020 election cycle in the amount up to $5,000 for actual costs incurred per Tribal Government. The Secretary of State will work in good faith with the Plaintiffs to seek an ongoing legislative appropriation to reimburse Tribal Governments for the administrative costs of issuing addresses and IDs for voting purposes in the next legislative assembly for the amount up to $5,000 for actual costs incurred per Tribal Government for each statewide election cycle.

13.    After each statewide election, the Secretary of State shall issue a report containing data regarding set aside ballots and verification of set aside ballots in counties that have tribal reservation land within their boundaries. Except as prohibited by state or federal law or a court order, the county report shall detail the reason each ballot was marked and set-aside, the means by which each set aside ballot was verified, and how many set-aside ballots were counted due to verification and how many set-aside ballots were not counted due to failure to verify. For set aside ballots that were marked set aside because of an insufficient ID, missing or invalid address, or address marked with a map, except as prohibited by state or federal law or a court order, the report will indicate whether the voter was assigned an address (if applicable), whether the voter's address was verified (if applicable), and the methods used to communicate the residential street address to the relevant Tribe and verified voters.

14.    The State shall accept as valid for voting purposes, a tribal ID or supplemental document issued by a Tribal Government, that locates a person's residence within a voting precinct by marking it on a map, or by another method agreed upon by the Parties, identifying the location of residence other than a numbered street address. All addresses provided in this manner will be assigned a 911 residential street address by the county 911 coordinator who shall also be required to communicate that address to the voter. If the location indicated by the voter has already been assigned a residential street address, that address shall be verified and provided to the voter. A ballot marked pursuant to this paragraph will not be discarded solely due to failure to reach the individual and communicate the

assigned or verified address. Any set-aside ballot marked pursuant to this paragraph with a verified or assigned address will be counted unless the ballot is invalid for a non-address related issue (e.g., wrong ballot cast).

15.    If a voter utilizes the method identified in paragraph 14 on election day, the individual shall be allowed to vote a set aside ballot. If an applicant utilizes the method identified in paragraph 14 on an absentee or mail ballot application, or if an address provided by the applicant is determined to be "invalid," the 911 coordinator will verify or assign an address as required by paragraph 14, and the Secretary shall direct the county auditors to provide supplemental documentation of that address along with the absentee or mail ballot to the applicant. This process shall be completed in a timely manner to ensure that the assignment or verification process does not cause the voter to miss their opportunity to vote. If necessary to determine the correct residential street address, the Secretary of State shall direct county auditors to contact the applicant and, if necessary, the Tribal Government.

16.    For purposes of this Consent Decree, a residential street address is "verified" by identifying and providing the correct address for the location of the voter's residence indicated by the voter, where such an address has already been assigned to that location of residence. An address is "assigned" to such a voter when no such address has previously been assigned to that location of residence under the county addressing system. For purposes of this Consent Decree, "residence" shall be defined by the North Dakota Century Code (see N.D. Cent. Code § 16.1-01-04.2).

17.	The Secretary of State, in consultation with county auditors and 911 coordinators in counties containing tribal reservation land, shall develop a system to verify or assign residential street addresses within the time frame permitted for verifying a set aside ballot for voters who vote a set aside ballot pursuant to paragraph 15. Once the residential street address for set aside ballots cast pursuant to paragraph 15 is verified or assigned by the 911 coordinator, the set aside ballot will be counted during the meeting of the county canvassing board.

18.	In addition to the procedures outlined for set-aside ballots above, the Secretary of State shall communicate with the Tribal Governments immediately after a statewide election regarding issues that might reasonably be cured by the Tribal Government on behalf of a tribal member or on behalf of a non-member resident who is a qualified elector living within the Tribal Government's jurisdiction. Nothing herein will prevent alterations to the specific procedures outlined in 72-06-03-05 of the North Dakota Administrative Code so long as they comply with this Consent Decree.

19.	The Secretary of State and the Plaintiff Tribes shall designate a set number of regularly scheduled meetings between tribal leaders and representatives of the Secretary of State's office, including in advance of statewide election cycles.

20.	The Secretary of State and the Plaintiff Tribes shall develop a memorandum of understanding with intent to improve communications and relationships between the Secretary of State and Spirit Lake Nation and Standing Rock Sioux Tribe, respectively.  Any other Tribal Government may request such a memorandum of

understanding be implemented between the Tribal Government and the Secretary of State.

21.  Nothing contained in this Consent Decree is intended to, nor shall be construed to, violate current state or federal law.

22.  The Secretary of State shall pay the full fee of the mediator used by the parties on February 6, 2020.

SO ORDERED AND ENTERED

This _____ day of _____, 2020.

_____
Daniel L. Hovland, District Judge
United States District Court