# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| Richard Brakebill, Dorothy Herman, Della Merrick, Elvis Norquay, Ray Norquay, and Lucille Vivier, on behalf of themselves, <br><br>    Plaintiffs, <br><br> vs. <br><br>Alvin Jaeger, in his official capacity as Secretary of State, <br><br>    Defendant. | **ORDER**, **CONSENT DECREE, AND JUDGMENT** <br><br><br><br> Case No. 1:16-cv-008 |
| Spirit Lake Tribe, on its own behalf and on behalf of its members, et al., <br><br>    Plaintiffs, <br> vs. <br><br>Alvin Jaeger, in his official capacity as Secretary of State, <br><br>    Defendant.. | <br><br><br><br> Case No. 1:18-cv-222 |

Before the Court is an uncontested motion for the entry of a Consent Decree filed on April 24, 2020. See Doc. No. 96. The Plaintiffs in the *Brakebill* case alleged that North Dakota's voter ID law, N.D.C.C. § 16.1-01-04.1 as amended, violates Section 2 of the Voting Rights Act (42 U.S.C.§1973), the 14th and 15th Amendments to the United States Constitution, and Article I and Article II of the North Dakota Constitution. In the *Spirit Lake* case, the Plaintiffs alleged the Secretary of State violated the voting rights guaranteed by Section 2 of the Voting Rights Act (42 U.S.C. §1973), and the 1st, 14th and 15th Amendments to the United States Constitution. The Plaintiffs alleged that the North Dakota Legislative Assembly's

1

enactment of N.D.C.C. § 16.1-01-04,1 and the Secretary's implementation of the statute violated their voting rights and the rights of their members.  The Secretary denied the allegations.  The cases have been consolidated.  In order to avoid prolonged, expensive, and potentially divisive litigation, all of the parties agreed to a compromise settlement and to entry of a Consent Decree.  The settlement encompasses all issues save for the pending motion for attorneys fees and costs in the *Brakebill* case which the Court will address in a separate order.

Approval of a consent decree is within the informed discretion of the Court.  United States v. Union Elec. Co., 132 F.3d 422, 430 (8th Cir. 1997).  That discretion generally should be exercised in favor of the settlement of litigation.  Donovan v. Robbins, 752 F.2d 1170, 1177 (7th Cir. 1985).  In reviewing a consent decree, the court must determine whether it is fair, adequate, reasonable, and consistent with the goals of the underlying legislation.  Union Elec. Co., 132 F.3d at 430; see also United States v. Hercules, Inc., 961 F.2d 796, 800 (8th Cir. 1992); United States v. Metro. St. Louis Sewer District, 952 F.2d 1040, 1044 (8th Cir. 1992).  The role of the court is to ensure that the settlement "is not illegal, a product of collusion, or against the public interest."  United States v. Colorado, 937 F.2d 505, 509 (10th Cir. 1991).

The Court has carefully reviewed the entire record, the parties' filings, the Consent Decree and the relevant law.  The Court finds the Consent Decree is fair, reasonable, and consistent with the law and the public interest.  For good cause shown, the motion (Doc. No. 96) is **GRANTED.**  It is therefore **ORDERED**, **ADJUDGED**, and **DECREED** that the terms of the Consent Decree are approved as set forth herein:

1. As used throughout this document, the term "Tribal Government" shall have the definition established in N.D.A.C. § 72-06-03-01(3) as defined on the date the Consent Decree is entered. The terms "tribal identification" and "supplemental documentation"

shall include the documentation described in N.D.A.C. §§ 72-06-03-02, 72-06-03-04, on the date the Consent Decree is entered. Nothing in the Consent Decree shall preclude the Secretary of State from recognizing additional forms of tribal ID and supplemental documentation pursuant to a) future agreement of the Parties or b) future administrative or legislative enactment.

2. This Court has jurisdiction over these actions pursuant to 28 U.S.C. §§ 1331,1343, 1362,1367, and 52 U.S.C. § 10308(f).

3. Entry of this Consent Decree shall constitute final judgment in the Brakebill and Spirit Lake cases, notwithstanding the pending Plaintiffs' Motion for Attorneys' Fees and Costs in the Brakebill Case (Case No. Doc. 1:16-cv-008, Doc. No. 107). However, after final judgment is entered, the Court will retain jurisdiction over the Global Settlement Agreement and this Consent Decree for the purpose of enforcing both the Settlement Agreement and the Consent Decree. If a dispute arises between the Parties relating to the implementation of the terms of this Consent Decree, the Parties shall confer in good faith in an attempt to resolve the dispute without Court involvement. If the Parties are unable to resolve the dispute through good faith conferral, the dispute may be presented to the Court by motion for resolution by the Court. The dispute resolution process described in this paragraph is intended to enforce the overall implementation of this Consent Decree with respect to voter ID related processes and procedures in North Dakota. The Court only has the jurisdiction to enforce the Consent Decree, not garden-variety election administration errors. It will be up to the Court to make a determination about when complaints constitute a violation of the Consent Decree.

4. The Secretary of State recently promulgated administrative rules, Chapter 72-06- 03 of the North Dakota Administrative Code, entitled Tribal Identification for Voting, which were approved by the Governor on February 4, 2020 for immediate emergency effectiveness (hereinafter "Rules"). Should the Secretary of State seek to amend the Rules, the Secretary of State shall confer in good faith with the tribal councils of the tribes located in North Dakota about such amendments before the amendments are promulgated.

5. Plaintiffs waive any rights they may have to the recovery of attorney's fees and costs from the Secretary of State or from any other North Dakota official or entity in both the Brakebill and Spirit Lake cases, except the amount already sought by motion in the Pending Brakebill Attorney's Fees Claim. The excepted amount is not resolved by the Consent Decree; it remains in dispute and shall be decided by the Court. This waiver is limited to the recovery of fees and costs Plaintiffs would be entitled as prevailing parties in these matters. This waiver does not extend to any future litigation that may arise regarding the enforcement of this Global Settlement and Consent Decree or any future controversy among the parties.

6. The Secretary of State shall recognize tribal IDs and supplemental documentation issued to tribal members and to non-member residents who are qualified electors living within the Tribal Government's jurisdiction.

7. The designation by a Tribal Government of a voter's current residential street address within the Tribal Government's jurisdiction, is valid and conclusive for purposes of voting. The Secretary of State shall also work with county 911 coordinators to encourage the coordinators and the Tribal Governments to assist one another and cooperate to

         identify the 911 street addresses for the physical location of residences within the Tribal Government's jurisdiction and share information about any addresses designated by the Tribal Government.

8. The Secretary of State shall ensure that Tribal Governments are provided with county-approved precinct maps for the precincts that include land within the Tribal Government's jurisdiction at least 50 days prior to a statewide election.

9. The Secretary of State shall incorporate the information addressed by this Consent Decree and the Rules, as applicable, into state materials for public education, pollworker training, the absentee ballot application form, and guidance to county auditors, including the election manual.

10. The Secretary of State shall create and distribute sample forms for the Tribal Governments to use as templates for tribal ID or supplemental documentation forms and keep these templates available on the Secretary of State's website. At the request of any Tribal Government, the Secretary of State shall make available, free-of-charge, tribal ID forms and supplemental documentation forms, for use by Tribal Governments.

11. The Secretary of State shall work in good faith with the Indian Affairs Commission and the Department of Transportation ("DOT") to develop and implement a program of distributing free nondriver photo identification cards on all North Dakota reservations within 30 days in advance of statewide elections, arranged in consultation with the Tribal Governments.

12. The Secretary of State shall work in good faith with the Office of Management and Budget and the Governor's Office to identify existing appropriations to reimburse Tribal Governments in North Dakota for the administrative costs of issuing addresses and IDs

for voting purposes for the 2020 election cycle in the amount up to $5,000 for actual costs incurred per Tribal Government. The Secretary of State will work in good faith with the Plaintiffs to seek an ongoing legislative appropriation to reimburse Tribal Governments for the administrative costs of issuing addresses and IDs for voting purposes in the next legislative assembly for the amount up to $5,000 for actual costs incurred per Tribal Government for each statewide election cycle.

13. After each statewide election, the Secretary of State shall issue a report containing data regarding set aside ballots and verification of set aside ballots in counties that have tribal reservation land within their boundaries. Except as prohibited by state or federal law or a court order, the county report shall detail the reason each ballot was marked and set-aside, the means by which each set aside ballot was verified, and how many set-aside ballots were counted due to verification and how many set-aside ballots were not counted due to failure to verify. For set aside ballots that were marked set aside because of an insufficient ID, missing or invalid address, or address marked with a map, except as prohibited by state or federal law or a court order, the report will indicate whether the voter was assigned an address (if applicable), whether the voter's address was verified (if applicable), and the methods used to communicate the residential street address to the relevant Tribe and verified voters.

14. The State shall accept as valid for voting purposes, a tribal ID or supplemental document issued by a Tribal Government, that locates a person's residence within a voting precinct by marking it on a map, or by another method agreed upon by the Parties, identifying the location of residence other than a numbered street address. All addresses provided in this manner will be assigned a 911 residential street address by the county 911 coordinator

who shall also be required to communicate that address to the voter. If the location indicated by the voter has already been assigned a residential street address, that address shall be verified and provided to the voter. A ballot marked pursuant to this paragraph will not be discarded solely due to failure to reach the individual and communicate the assigned or verified address. Any set-aside ballot marked pursuant to this paragraph with a verified or assigned address will be counted unless the ballot is invalid for a non-address related issue (e.g., wrong ballot cast).

15. If a voter utilizes the method identified in paragraph 14 on election day, the individual shall be allowed to vote a set aside ballot. If an applicant utilizes the method identified in paragraph 14 on an absentee or mail ballot application, or if an address provided by the applicant is determined to be "invalid," the 911 coordinator will verify or assign an address as required by paragraph 14, and the Secretary shall direct the county auditors to provide supplemental documentation of that address along with the absentee or mail ballot to the applicant. This process shall be completed in a timely manner to ensure that the assignment or verification process does not cause the voter to miss their opportunity to vote. If necessary to determine the correct residential street address, the Secretary of State shall direct county auditors to contact the applicant and, if necessary, the Tribal Government.

16. For purposes of this Consent Decree, a residential street address is "verified" by identifying and providing the correct address for the location of the voter's residence indicated by the voter, where such an address has already been assigned to that location of residence. An address is "assigned" to such a voter when no such address has previously been assigned to that location of residence under the county addressing

system. For purposes of this Consent Decree, "residence" shall be defined by the North Dakota Century Code (see N.D. Cent. Code § 16.1-01-04.2).

17. The Secretary of State, in consultation with county auditors and 911 coordinators in counties containing tribal reservation land, shall develop a system to verify or assign residential street addresses within the time frame permitted for verifying a set aside ballot for voters who vote a set aside ballot pursuant to paragraph 15. Once the residential street address for set aside ballots cast pursuant to paragraph 15 is verified or assigned by the 911 coordinator, the set aside ballot will be counted during the meeting of the county canvassing board.

18. In addition to the procedures outlined for set-aside ballots above, the Secretary of State shall communicate with the Tribal Governments immediately after a statewide election regarding issues that might reasonably be cured by the Tribal Government on behalf of a tribal member or on behalf of a non-member resident who is a qualified elector living within the Tribal Government's jurisdiction. Nothing herein will prevent alterations to the specific procedures outlined in 72-06-03-05 of the North Dakota Administrative Code so long as they comply with this Consent Decree.

19. The Secretary of State and the Plaintiff Tribes shall designate a set number of regularly scheduled meetings between tribal leaders and representatives of the Secretary of State's office, Including in advance of statewide election cycles.

20. The Secretary of State and the Plaintiff Tribes shall develop a memorandum of understanding with intent to improve communications and relationships between the Secretary of State and Spirit Lake Nation and Standing Rock Sioux Tribe, respectively.

Any other Tribal Government may request such a memorandum of understanding be implemented between the Tribal Government and the Secretary of State.

21. Nothing contained in this Consent Decree is intended to, nor shall be construed to, violate current state or federal law.

22. The Secretary of State shall pay the full fee of the mediator used by the parties on February 6, 2020.

**IT IS SO ORDERED.**

Dated this 27th day of April, 2020.

*/s/ Daniel L. Hovland*
Daniel L. Hovland, District Judge
United States District Court