# United States Court of Appeals
### For the Eighth Circuit

_____

No. 20-2142
_____

Spirit Lake Tribe, on its own behalf and on behalf of its members; Dion Jackson; Kara Longie; Kim Twinn; Terry Yellow Fat; Leslie Peltier; Clark Peltier; Standing Rock Sioux Tribe, on its own behalf and on behalf of its members; Richard Brakebill; Della Merrick; Elvis Norquay, on behalf of himself; Ray Norquay, on behalf of himself; Lucille Vivier, on behalf of herself,

*Plaintiffs - Appellees*,

v.

Alvin Jaeger, in his official capacity as the North Dakota Secretary of State,

*Defendant - Appellant*.
_____

Appeal from United States District Court
for the District of North Dakota - Western
_____

Submitted: February 17, 2021
Filed: July 16, 2021
_____

Before COLLOTON, BENTON, and KELLY, Circuit Judges.
_____

COLLOTON, Circuit Judge.

This appeal arises from a challenge by Native American residents of North Dakota to portions of the State's elections statutes. After the parties resolved the suit with a consent decree, the district court[1] granted the plaintiffs' motion for attorney's fees. The court rejected the contention of the North Dakota Secretary of State that the motion was untimely under Federal Rule of Civil Procedure 54 and that any untimeliness was not the product of excusable neglect. On appeal by the Secretary, we conclude that although the motion was untimely, the plaintiffs' failure to meet the filing deadline was the result of excusable neglect. We therefore affirm the order awarding fees.

I.

The plaintiffs sued the North Dakota Secretary of State in January 2016, alleging that the State's voter identification requirements violated the Constitution of the United States and the North Dakota Constitution, as well as Section 2 of the Voting Rights Act. In August 2016, the district court granted the plaintiffs' motion for a preliminary injunction. The court enjoined the Secretary from enforcing the State's voter identification laws in the upcoming election without providing a "failsafe" voting option for those who could not produce the required identification. The Secretary did not appeal.

The state legislature subsequently repealed the disputed provisions and enacted a new voter identification law in 2017. The Secretary then moved to dissolve the August 2016 preliminary injunction. On April 3, 2018, the district court dissolved as moot the August 2016 preliminary injunction and issued a second preliminary

---

[1]The Honorable Daniel L. Hovland, United States District Judge for the District of North Dakota.

injunction against enforcement of the State's updated voter identification law. The Secretary appealed this second preliminary injunction, and this court later vacated the district court's order. *Brakebill v. Jaeger*, 932 F.3d 671, 681 (8th Cir. 2019).

Meanwhile, on April 17, 2018, fourteen days after the district court dissolved the first preliminary injunction, the plaintiffs moved for attorney's fees and costs related to that injunction. The court reserved decision on the motion. In April 2020, the court consolidated the plaintiffs' case with another one involving similar claims. The parties resolved the consolidated dispute with a consent decree. According to the decree, the plaintiffs waived any right to recover attorney's fees and costs from the Secretary except as to the plaintiffs' pending motion for fees related to the dissolved August 2016 injunction.

The Secretary opposed the motion for fees as untimely. He argued that the fourteen-day deadline to move for attorney's fees under Rule 54 ran from the date the court entered the August 2016 preliminary injunction, not from the date when the court dissolved it. The district court concluded that Rule 54 requires motions for attorney's fees to be filed within fourteen days of the entry of a final judgment at the conclusion of a case, and that the plaintiffs' motion was timely. In the alternative, the court determined that public policy and "excusable neglect" provided a basis for reaching the same result. Turning to the merits of the motion, the court decided that the plaintiffs were entitled to fees as the "prevailing party" in a civil rights lawsuit under 42 U.S.C. § 1988(b). But the court found that the fee request was excessive, and granted only forty percent of the amount sought. The court ultimately awarded fees and costs of $452,983.76, and the Secretary appeals.

II.

This case first presents the question whether the entry of an order granting a preliminary injunction constitutes an "entry of judgment" triggering the fourteen-day

-3-

deadline to move for attorney's fees under Federal Rule of Civil Procedure 54. We conclude that it does.

A claim for attorney's fees and related expenses generally "must be made by motion." Fed. R. Civ. P. 54(d)(2)(A). The motion must "be filed no later than 14 days after the entry of judgment," unless a statute or a court order provides otherwise. Fed. R. Civ. P. 54(d)(2)(B)(i). "Judgment" is defined to include "any order from which an appeal lies." Fed. R. Civ. P. 54(a). This definition "encompasses interlocutory rulings that are appealable as of right, like preliminary injunctions, in addition to final judgments on the merits." *Nat'l Basketball Ass'n v. Minn. Pro. Basketball, Ltd. P'ship*, 56 F.3d 866, 872 (8th Cir. 1995). Because preliminary injunctions are orders from which an appeal lies, 28 U.S.C. § 1292(a)(1), a plain reading of Rule 54 shows that the entry of a preliminary injunction triggers the fourteen-day deadline to move for attorney's fees, unless a statute or a court order provides otherwise.

The plaintiffs contend that their motion for attorney's fees was timely because Rule 54's filing deadline is triggered only by the entry of a final judgment at the conclusion of a case. They rely on an advisory committee note to Rule 54, which states that the rule establishes "a deadline for motions for attorneys' fees—14 days after final judgment unless the court or a statute specifies some other time." Fed. R. Civ. P. 54 advisory committee's note to 1993 amendment. And in ascertaining the meaning of the rules, "the construction given to them by the Committee is of weight." *Miss. Pub. Corp. v. Murphree*, 326 U.S. 438, 444 (1946).

An advisory committee note, however, cannot change the meaning of the plain language of a federal rule of procedure. So "if the rule and the note conflict, the rule must govern." *United States v. Carey*, 120 F.3d 509, 512 (4th Cir. 1997). Rule 54 itself defines "judgment" as including "any order from which an appeal lies." Fed. R. Civ. P. 54(a). The phrase "final judgment" is employed in other subsections of

-4-

Rule 54, *see* Fed. R. Civ. P. 54(b)-(c), but is absent from the provision creating a filing deadline for motions for attorney's fees. The plain language of Rule 54 means that an order granting a preliminary injunction is a "judgment" that triggers the deadline to move for attorney's fees. "We accept the Rule as meaning what it says." *Schiavone v. Fortune*, 477 U.S. 21, 30 (1986).

The plaintiffs argue that a "holistic reading" of Rule 54 supports their position. The rule provides that a motion for attorney's fees must "specify the judgment and the statute, rule, or other grounds entitling the movant to the award." Fed. R. Civ. P. 54(d)(2)(B)(ii). The plaintiffs contend that they could not have satisfied this requirement when the court granted the August 2016 preliminary injunction, because they were not yet a "prevailing party" entitled to attorney's fees under 42 U.S.C. § 1988(b). It is true that a fee request at the preliminary injunction stage will be premature in some instances. *See Sole v. Wyner*, 551 U.S. 74, 83-84 (2007). When a plaintiff's "initial victory [is] ephemeral," and the merits of the case are ultimately decided against it, success in securing a preliminary injunction does not render the plaintiff a prevailing party. *Id.* at 86. On the other hand, "a preliminary injunction can in some instances carry the judicial imprimatur required . . . to convey prevailing party status." *Rogers Grp., Inc. v. City of Fayetteville*, 683 F.3d 903, 909-10 (8th Cir. 2012) (internal quotation omitted).

Even if a request for an award of fees would be premature in a particular case, however, a plaintiff can still file an appropriate motion and comply with the time limit of Rule 54. Such a motion would specify the order granting a preliminary injunction as the judgment, and would identify the injunction as the grounds entitling the plaintiff to the award, because the injunction could ripen into a ruling that makes the plaintiff a "prevailing party." If the district court deems the motion premature, then the court has discretion to defer a ruling on the motion, or to dismiss the motion without prejudice and order a new deadline for filing. *See* Fed. R. Civ. P. 6(b)(1)(A),

54(d)(2)(B); *see also Cathedral Art Metal Co. v. Divinity Boutique, LLC*, No. 1:18-cv-141, 2018 WL 2356181, at *4-5 (N.D. Ga. May 24, 2018).

The plaintiffs complain that the Secretary's interpretation of Rule 54 would require a "flurry of meaningless make-work motion practice," because fee motions following a preliminary injunction typically will be premature. But the timely filing of a motion complies with the text of Rule 54 and serves one purpose of the provision—namely, "to assure that the opposing party is informed of the claim [for fees] before the time for appeal has elapsed." Fed. R. Civ. P. 54 advisory committee's note to 1993 amendment. The notice-giving function of the rule is important, because a defendant's "potential liability for fees in this kind of litigation can be as significant as, and sometimes even more significant than, their potential liability on the merits." *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598, 608 (2001) (internal quotation omitted).

The plaintiffs secured a preliminary injunction in August 2016 and did not move for attorney's fees related to that injunction until April 2018. No statute or court order extended the filing deadline beyond fourteen days from entry of the order granting the injunction. *See* Fed. R. Civ. P. 54(d)(2)(B). Nor did the local rules of the district court extend the time, even assuming that they could constitute a "court order" under the rule. *Cf. CX Reinsurance Co. v. Johnson*, 977 F.3d 306, 315 (4th Cir. 2020); *Jones v. Cent. Bank*, 161 F.3d 311, 312-13 (5th Cir. 1998). Accordingly, the plaintiffs' motion was untimely under Rule 54.

### III.

The district court ruled in the alternative that it could extend the time for filing the motion for fees, because the plaintiffs' untimely action was the result of "excusable neglect." We review a district court's determination of excusable neglect for abuse of discretion. *Paris Sch. Dist. v. Harter*, 894 F.3d 885, 890 (8th Cir. 2018).

-6-

Federal Rule of Civil Procedure 6(b)(1)(B) provides that "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time" on a party's motion "after the time has expired if the party failed to act because of excusable neglect." Whether a party's neglect of a deadline is excusable "is at bottom an equitable" inquiry. *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993). Relevant considerations include the danger of prejudice to the opposing party, the length of the delay, the reason for the delay, and whether the movant acted in good faith. *Id.*

The Secretary argues that he was prejudiced by the district court's consideration of the plaintiffs' untimely motion. After the court enjoined enforcement of the State's voter identification laws, the Secretary declined to appeal and says that he instead "chose to improve the law by seeking a legislative change." He now suggests that he would have appealed the injunction if he had received timely notice of the plaintiffs' fee request. But the Secretary had some notice that the plaintiffs planned to request attorney's fees if they succeeded on their claims: the complaint sought an award of "attorney fees and costs as allowed and required by law." The eventual amount requested by the plaintiffs—more than one million dollars—might not have been foreseeable as a fair estimate of the work performed. But the district court denied sixty percent of the requested fees, and the amount actually awarded was within the realm of what the Secretary reasonably could anticipate.

Any prejudice to the Secretary is outweighed by other considerations. There is no evidence that the plaintiffs acted in bad faith. And there are defensible reasons for their delay. The Supreme Court has explained that the "tentative character" of a preliminary injunction—"in view of the continuation of the litigation to definitively resolve the controversy"—sometimes renders a fee request at that initial stage premature. *Sole*, 551 U.S. at 84. In the absence of authority from this court or any other circuit, the plaintiffs relied on two decisions concluding that a preliminary

-7-

injunction is not the "traditional judgment needed for a triggering event for filing a motion for attorney's fees." *Planned Parenthood Minn., N.D., S.D. v. Daugaard*, 946 F. Supp. 2d 913, 921-22 (D.S.D. 2013); *Consol. Paving, Inc. v. County of Peoria*, No. 10-CV-1045, 2013 WL 916212, at *2-3 (C.D. Ill. Mar. 8, 2013). The advisory committee note to Rule 54 also muddied the waters by describing the relevant triggering event as the entry of "final judgment," despite the rule's use of the term "judgment." *See* Fed. R. Civ. P. 54 advisory committee's note to 1993 amendment. The Secretary could have factored the uncertainty in the law into his decision whether to appeal the injunction. Under all of the circumstances, we conclude that the district court did not abuse its discretion in ruling that the plaintiffs' failure to comply with Rule 54's filing deadline was the result of excusable neglect.

\* \* \*

For these reasons, the judgment of the district court is affirmed. The plaintiffs' motion for leave to file a sur-reply brief is denied.

_____